### The William Crane.

*(District Court, D. Massachusetts. March 5, 1882.)*

COLLISION — STEAMER AND SAIL-VESSEL — INTERSECTING COURSES — DUTY OF STEAMER.

    Where a steamer and a schooner were approaching each other in nearly opposite courses, and the schooner kept her course and a collision ensued, the steamer is in fault for not keeping out of the way.

*J. C. Dodge & Sons*, for libellants.

*Morse & Stone*, for claimants.

NELSON, D. J. This is a libel for damage by collision, filed by the owners, master, and crew of the schooner Lucy K. Cogswell (with whom are joined the underwriters of her cargo) against the steamship William Crane.

The collision took place between 2 and 3 o'clock of the morning of July 31, 1881, off Cape Pogue, near the entrance of Vineyard sound, the weather at the time being clear, and the wind

blowing a strong breeze from S. W. The schooner, bound eastward and heading E. S. E., was proceeding under her mainsail, foresail, and jib at a speed of nine knots. The steamer was bound westward, and was steaming on a course very nearly opposite to that of the schooner, at a speed of ten knots. The schooner struck the starboard side of the steamer just aft of the pilot-house, and received injuries which caused her to sink in about 20 minutes. The steamer suffered no injury. The defence of the steamer is that the schooner changed her course, and did not show a lighted torch. As to the second defence, I am of opinion that the claimants have failed to make it out. The men on the steamer say that they did not see any lighted torch shown on the schooner. But, on the other hand, those on the schooner swear that one was shown. I must place more reliance upon this affirmative testimony than upon that on the other side, which is merely negative. The libellants claim that the schooner kept her course, and made no change of helm until the moment of collision, when the helm was put to starboard to avoid as much as possible the effect of the blow, but that the change of helm was much too late to affect the vessel's course. This is true, if the testimony of the master, mate, steward, and two seamen, who were all the persons on board the schooner, is to be believed. They all testify that no change of course was made. The account given by the men on the steamer is that she was passing well to windward of the schooner, under slow speed, and the schooner had got well abreast of the steamer's bow, when the schooner made a sudden shear to windward, and ran directly into the steamer's side.

The decision of the case turns wholly upon the question whether the schooner kept her course. If she did, then there is no possible excuse for the steamer's running into her. The night was clear, and the schooner was seen, or should have been seen, from the steamer in ample season to avoid her. The account given by the steamer's men of this affair strikes me as highly improbable. The master and mate of the schooner, both intelligent and experienced seamen, were on deck watching the approach of the steamer, and the mate was at the helm. What motive could have induced them, in such a situation, to luff and bring their vessel against the steamer, I am unable to conjecture. Such an act would indicate the grossest ignorance, or else a wilful and reckless purpose to imperil both property and life. No such imputation is made by the claimants, and is not to be believed for a moment. I am satisfied that the witnesses who have given this account of the accident are mistaken.

It is much more probable that the accident was caused by the steamer's failing to make sufficient allowance for the rapid rate of speed at which the two vessels were nearing each other. They were certainly within less than a mile of each other when the schooner's lights were first seen from the steamer. From the testimony of the captain of the steamer the collision occurred within less than three minutes after they were seen. It also appears that other sailing-vessels were near the schooner at the time, and it is possible that their lights were confused with those of the schooner. But, at all events, I am satisfied there was no change of course by the schooner. That being so, the steamer was bound at her peril to keep out of her way.

Interlocutory decree for the libellants.